JUAN GOMEZ v. THE STATE.

No. 20924. Delivered March 13, 1940.

The opinion states the case.

*W. B. Barbour* and *Edward Hargrove,* both of Cotulla, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

HAWKINS, Presiding Judge.

Conviction is for murder; punishment assessed at twenty-five years in the penitentiary.

There are no bills of exception in the record. The sole question is whether the evidence supports the verdict.

Deceased, Eujenio Rodriguez, and appellant met at a restaurant and beer place operated by Victor Aldaco in Encinal. For some reason Aldaco put appellant and deceased out of his place of business. It is difficult to tell from his evidence whether it was because of boisterous conduct on their part, or because he was apprehensive that a fight might occur between them. In a few minutes after they were put out of the place appellant returned and said to his brother George Gomez: "Let's go, I fixed him." Several witnesses testified to this same statement by appellant when he came back into the restaurant. A physician who examined Rodriguez testified that he had a stab wound in his side between the navel and right hip bone which penetrated the intestines. An officer talked to Rodriguez at the hospital. He told the officer that he had been informed by the doctor that he could only live three or four hours, and told witness that George Gomez had thrown a bottle at him, and that appellant then stabbed him. Rodriguez only lived about an hour and a half after the statement was made. George Gomez testified that he had had previous trouble with deceased; that on the night of the killing deceased struck at him with a beer bottle, and then struck appellant "on the shirt" with his hand, and then appellant said to him, (George Gomez) "Let's go, I fixed him." Appellant testified that two weeks before the night of the killing deceased had cursed him, threatened him with a knife, and that he, appellant, had run from deceased on that occasion; that he was afraid of deceased because of his conduct and because he knew he had cut his brother George; that on the night of the killing he heard deceased cursing, saw

him go out of the beer place; that he followed deceased outside, and that deceased came "charging" at appellant, and that appellant "held the knife out like that. He ran into me. After that I went inside and told my brother 'Come on, let's go, I fixed him.' " On cross-examination appellant testified as follows: "Rodriguez wasn't cursing me on the outside he just charged on me. He didn't curse me at all. He made a run at me and I had my knife opened and he ran into it. I stopped and he ran into my knife. I opened my knife when I went outside if he would come after me. I don't remember how far he had to run before he ran into the knife. I can't tell you how far he had to run; I can't tell you more, or less. I can't tell this jury how far he had to run before he ran into my knife that night because I was drunk. I was afraid of Eugenio Rodriguez. When I went outside Rodriguez was already out there. Yes, I followed him, and I knew he was out there. This fight didn't happen inside of the saloon, he cursed me on the inside of the saloon, he didn't run into the knife on the inside building. I don't know who was outside when I got there, I was drunk. I don't know if Rodriguez had a gun, I never saw any, and I didn't see a knife in his hands."

Ed Carr testified that appellant told witness a few hours after the killing that the reason he killed Rodriguez was "because it got to where he couldn't have a good time in Encinal." This statement, however, was denied by appellant.

The record is somewhat confusing, brought about apparently by the fact that the witnesses who were present seemed to have been more or less intoxicated.

The foregoing brief recital of the salient points in the testimony demonstrates that the verdict and judgment find support in the evidence.

The judgment is affirmed.